UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re OFFICEMAX, INC. SECURITIES LITIGATION | Master File No. 1:00-CV-2432<br><br>Judge O'Malley<br>Magistrate Judge Vecchiarelli |

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO CLARIFY AND/OR RULE 59(E) MOTION TO AMEND COURT'S ORDER AND REQUEST FOR ORAL ARGUMENT

CRAVATH, SWAINE & MOORE
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

BAKER & HOSTETLER LLP
3200 National City Center
1900 East 9th Street
Cleveland, OH 44114
(216) 621-0200

Counsel for Defendants

TABLE OF CONTENTS


Preliminary Statement . . . . . . . . . . 1

I. THE COURT'S ORDER IS AN EFFECTIVE FINAL JUDGMENT DISMISSING THE SECOND AMENDED COMPLAINT WITH PREJUDICE. . . . . . . . . . 1

II. THE STANDARD APPLICABLE TO PLAINTIFFS' MOTION FOR RECONSIDERATION. . . . . . . . . . 2

III. PLAINTIFFS' RULE 59(E) MOTION FOR RECONSIDERATION SHOULD BE DENIED BECAUSE IT IS BASED ON EVIDENCE AND ARGUMENTS THAT WERE OR COULD HAVE BEEN PREVIOUSLY PRESENTED. . . . . . . . . . 3

IV. PLAINTIFFS' PROPOSED AMENDMENT IS, IN ANY EVENT, FUTILE. . . . . . . . . . 6

A. Plaintiffs' "New" Allegations Would Not Correct the Complaint's Failure To Allege With Particularity Facts Giving Rise to a Strong Inference of Scienter. . . . . . . . . . 6

1. Absence of Motive. . . . . . . . . . 6

2. Lack of Particularity. . . . . . . . . . 6

3. Lack of Basis. . . . . . . . . . 8

4. The Totality of the Circumstances. . . . . . . . . . 8

B. Plaintiffs' Proposed Third Amended Complaint Would Not Cure the Other Fatal Defects Identified in Defendants' Motion To Dismiss. . . . . . . . . . 9

V. THE PROPOSED AMENDMENTS WILL IMPOSE NEEDLESS DELAY AND UNDUE PREJUDICE. . . . . . . . . . 11

Conclusion . . . . . . . . . . 14

Defendants OfficeMax, Inc., Michael Feuer, and Jeffrey Rutherford respectfully submit this memorandum of law in opposition to plaintiffs' so-called "Motion To Clarify and/or Rule 59(e) Motion To Amend Court's Order" ("Pl. Br.").

## Preliminary Statement

On March 26, 2002, following extensive briefing and oral argument, the Court issued a "Memorandum and Order" ("Mem. Op.") granting in its entirety defendants' motion to dismiss plaintiffs' Second Amended Complaint ("Compl."). The Court also entered a separate one-page "Order" stating that "This case is DISMISSED". The rationale of the Court's decision was made clear by the Court's detailed Memorandum. The procedural posture of the case is made clear by the Order.

Plaintiffs are, of course, at liberty to appeal the Court's ruling--although defendants believe an appeal would be unsuccessful. But their attempt instead to evade it so as to obtain leave to file a fourth complaint is without merit. Judged by plaintiffs' vague promises as to what a third amended complaint would contain, the submission of yet another complaint in this action would in any event be futile.

## I. THE COURT'S ORDER IS AN EFFECTIVE FINAL JUDGMENT DISMISSING THE SECOND AMENDED COMPLAINT WITH PREJUDICE.

Plaintiffs purport to be confused as to whether the Order dismissed their action with or without prejudice, and whether entry of that Order constituted a final, appealable judgment. Defendants believe that the law is clear on these points. Absent explicit leave to amend, an order dismissing a case (except for lack of jurisdiction, for improper venue, or for failure to join a party) is an adjudication on the merits and terminates the case with prejudice. See Fed. R. Civ. P. 41(b); Hoover v. Langston Equip. Assocs., Inc., 958 F.2d 742, 746 (6th Cir. 1992) ("Because the judge's order dismissed the instant case without qualification, the case was finally adjudged for purposes of Rule 41(b) and plaintiffs had no right to amend their

complaint."); Guzowski v. Hartman, 849 F.2d 252, 255 n.2 (6th Cir. 1988) ("It is undisputed that the District Court's dismissal standing alone, was on the merits and thus would be res judicata.").

Further, there is no doubt that this Court's Order satisfies the so-called "separate judgment rule" of Rule 58, as applied by the Sixth Circuit. Plaintiffs' invocation of the law of "the Second Circuit, in particular" (Pl. Br. 1), is odd--unless the discussion was recycled from a brief intended for that Circuit--and irrelevant. The Sixth Circuit has rejected any hyper-technical requirement that the "separate judgment" dismissing a case be styled a "Judgment" rather than an "Order". Compare, e.g., Peake v. First Nat'l Bank and Trust Co. of Marquette, 717 F.2d 1016, 1019-1020 (6th Cir. 1983) (finding an "Order" "set forth on a separate document" to be a final judgment under Rule 58) with Jetero Constr. Co., Inc. v. S. Memphis Lumber Co., Inc., 531 F.2d 1348, 1351 (6th Cir. 1976) (requiring entry of an order separate from the memorandum opinion, but not addressing the title of such order).

Thus, plaintiffs' case has been dismissed with prejudice by a final, appealable order. Absent reconsideration and revocation of that order, there is no action still pending before this Court in which an amended complaint could be filed; plaintiffs' only proper route is appeal.

## II. THE STANDARD APPLICABLE TO PLAINTIFFS' MOTION FOR RECONSIDERATION.

Plaintiffs attempt to position their motion under Rule 15(a)'s generally lenient attitude towards amendments to pleadings, but once final judgment has been entered, a considerably more rigorous standard applies under Rule 59(e).

Although the Sixth Circuit has not spoken authoritatively on the subject, the reasoning of Professors Wright and Miller is persuasive:

> Most courts faced with the problem have held that once a judgment is entered the filing of an amendment cannot be allowed until the judgment is set aside or vacated under Rule 59 or Rule 60. . . . This approach appears sound. To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation. Furthermore, the draftsmen of the rules included Rules 59(e) and 60(b) [speaking specifically in terms of judgments] to provide a mechanism for those situations in which

> relief must be obtained after judgment and the broad amendment policy of Rule 15(a) should not be construed in a manner that would render those provisions meaningless.

6 Fed. Prac. & Proc. Civ. 2d § 1489 (2002); see also Graham v. Mercer, No. 00-1281, 2000 WL 1720972, at *2 (6th Cir. Nov. 9, 2000) (unpublished disposition) ("Once a district court dismisses a suit, the plaintiff may either: (1) appeal the judgment; or (2) seek leave to amend under Rule 15(a) after having the judgment reopened under either Rule 59 or 60." (emphasis added)) (copy attached hereto as Ex. B).[1]

Thus, if plaintiffs wish leave to file their amended complaint under Rule 15(a), they must first persuade this Court, applying the standard of Rule 59(e), to reconsider its dismissal with prejudice.

## III. PLAINTIFFS' RULE 59(E) MOTION FOR RECONSIDERATION SHOULD BE DENIED BECAUSE IT IS BASED ON EVIDENCE AND ARGUMENTS THAT WERE OR COULD HAVE BEEN PREVIOUSLY PRESENTED.

Under Sixth Circuit law, "[m]otions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence". E.g., Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998). Thus, a "Rule 59(e) motion may not be used to relitigate old matters or to raise arguments or present evidence that could have been raised prior to the entry of judgment". 11 Fed. Prac. & Proc. Civ. 2d § 2810.1 (2002); see also Sault Ste. Marie Tribe, 146 F.3d at 374; Meekison v. Ohio Dep't of Rehab. and Corr., 181 F.R.D. 571, 572 (S.D. Ohio 1998). "Rule 59(e) may not be utilized to submit evidence that was previously available or that could have been submitted with the exercise of reasonable diligence." Davis v. Bagley, No. C-1-97-402, 2002 WL 193579, at *4 (S.D. Ohio Jan. 17, 2002) (copy attached hereto as Ex. C); see also Gencorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999).

---

[1] Lloyd v. United Liquors, Corp., 203 F.2d 789 (6th Cir. 1953), cited by plaintiffs, is not to the contrary. That opinion, which reflects a procedural vagueness perhaps related to the relative novelty of the Federal Rules of Civil Procedure at the time, dealt with a motion for leave to amend made (and denied) prior to the grant of a motion to dismiss, and the Sixth Circuit additionally reversed the dismissal.

Plaintiffs do not even argue in their motion that it was legal error for this Court to dismiss the Second Amended Complaint. Thus, they must justify their request for reconsideration by offering "newly discovered evidence", or not at all. Their purported "new evidence", however, consists in large part of old allegations warmed over, with a scattering of additional purported facts which they do not show--or even quite assert--to be "newly discovered".

Plaintiffs rehash in their brief various allegations previously made in the Second Amended Complaint:

- That OfficeMax made optimistic statements despite knowledge of "massive inventory problems" (compare Pl. Br. 3 with Compl. ¶¶ 90-96);
- That OfficeMax had old inventory in the backs of stores but only "rarely" marked it down when it "first" became obsolete (compare Pl. Br. 6 with Compl. ¶¶ 90-96);
- That OfficeMax concealed dismal financial performance by improperly recognizing vendor rebates and allowances as income (compare Pl. Br. 3 & n.2 with Compl. ¶¶ 97-100);[2] and
- That OfficeMax overbought inventory in order to generate current period vendor income (compare Pl. Br. 6-7 with Compl. ¶¶ 90-96).

To the extent plaintiffs make any assertions not already substantially covered in the Complaint, Rule 59(e) requires that "new" evidence must be newly discovered (not just held in reserve), and indeed that it be evidence that could not previously have been "submitted with the exercise of reasonable diligence". Davis, 2002 WL 193579, at *4. Plaintiffs do not assert, and give no reason to believe, that anything they raise now is "newly discovered".

First, as long ago as January of 2001 counsel for plaintiffs asserted that "we interviewed ex-employees, we got a lot of very, very important detailed information". (1/18/01 Hearing Tr. 16 (see Aff. of Aviva O. Wertheimer, dated May 29, 2001, submitted in support of Defendants' Mot. To Dismiss ("Wertheimer Aff.") (copy served herewith for the Court's

[2] Plaintiffs still allege no change in OfficeMax's accounting policy that coincides with the beginning of the Class Period.

convenience), Ex. 26).) At oral argument in August, counsel represented that four former employees of the company could testify to the acceleration of purchases to obtain vendor rebates to manage income. (8/22/01 Hearing Tr. 77 (excerpts attached hereto as Ex. A).)[3] Now, plaintiffs invoke "a former Vice President" (Pl. Br. 3-6), and "store managers" and "other former OfficeMax employees" (id. at 6). There is no reason to believe that these are not the same ex-employees interviewed in detail as early as January of 2001, nor that anything they have "recently" told counsel they did not or could not have also told counsel long ago. Indeed, plaintiffs are careful never to quantify "recently" or "very recently", or to assert that any of this information could not have been included in the Second Amended Complaint.

Second, plaintiffs attempt to create an impression that OfficeMax was experiencing cash flow problems during the class period by listing a handful of lawsuits between OfficeMax and vendors, all of which were of public record prior to the drafting of the first complaint in this action. (Id. at 3-4.) (In fact, for a company with many hundreds of suppliers, a handful of such lawsuits is no evidence of "cash flow problems" or widespread vendor relations problems.) The supposedly inconsistent statements that OfficeMax had a "positive cash flow" and "good relationships with its vendors" now quoted by plaintiffs (id.) are from an analyst report and an OfficeMax 10-K, respectively, each of which was already in the hands of plaintiffs' counsel as they prepared the Second Amended Complaint.[4]

Thus, while plaintiffs' would-be Third Amended Complaint is described to the Court and to the defendants largely in vague and conclusory terms, what is promised appears to be merely a repackaging of the allegations previously dismissed by this Court, with a cosmctic scattering of "new" allegations long known or available to the plaintiffs. This is not "newly

---

[3] As a result of a transcription error, the transcript reads "accelerating rebates to *management ethics*" (emphasis added).

[4] See Compl. ¶ 51, excerpting March 3, 1999 Donaldson, Lufkin & Jenrette analyst's report; ¶ 58, excerpting OfficeMax 1998 annual report released in April 1999, which included the publicly available April 8, 1999 10-K (see Wertheimer Aff. Exs. 2 and 8).

discovered evidence" as required under Rule 59(e), and leave to amend therefore should be denied. (See p. 3 supra.)

IV. PLAINTIFFS' PROPOSED AMENDMENT IS, IN ANY EVENT, FUTILE.

Even if plaintiffs' action had not yet been dismissed, and they faced only the lenient standard of Rule 15(a), the proposed Third Amended Complaint would be rejected as futile, and should also be rejected for that reason. See, e.g., Blakely v. United States, 276 F.3d 853, 874 (6th Cir. 2002); In re Champion Enters., Inc. Sec. Litig., 145 F. Supp. 2d 871, 874-75 (E.D. Mich. 2001).

A. Plaintiffs' "New" Allegations Would Not Correct the Complaint's Failure To Allege With Particularity Facts Giving Rise to a Strong Inference of Scienter.

1. Absence of Motive.

Plaintiffs make no effort at all to remedy their failure to identify any motive for the defendants to have perpetrated the fraud they allege (see Pl. Br. 5), nor to rebut the Court's conclusion that the defendants in fact had "a disincentive to do so" (Mem. Op. 25).[5]

2. Lack of Particularity.

While promising "new" evidence and more detail, plaintiffs' memorandum in fact relies repeatedly on assertions as general and conclusory as those which made up their complaint.

First, plaintiffs' conclusory promises of additional detail, support and explanation (see, e.g., Pl. Br. 3, 5-6) cannot substitute for actual particularity and so cannot justify leave to replead, or sufficiently establish that repleading would not be futile, at this late stage.

---

[5] Defendants do not contend that absence of motive is per se fatal to scienter (see 8/22/01 Tr. 16 (Ex. A); Def. Mem. in Support of Mot. To Dismiss 29-30; Def. Reply Mem. 16-19), but do contend that the complete absence of motive is highly relevant to the strength of an inference of scienter, and that the presence of a financial disincentive weighs against an inference of scienter in the "totality of the circumstances" analysis.

Second, when plaintiffs recite anything beyond mere promises, the allegations are as conclusory and general as those already considered and dismissed by this Court, including, for example, assertions that unnamed ex-employees have said that management "was not 'living for the long term'", or have "confirm[ed] plaintiffs' allegations of GAAP violations".[6] (See Pl. Br. 3-6.)

The Court will look in vain for what the law requires and the Court previously found lacking: identification of specific examples of internal reports containing specific information actually inconsistent with public statements made by management (see 8/22/01 Hearing Tr. 95 (Ex. A); Mem. Op. 26, 28; Def. Mem. in Support of Mot. To Dismiss 16-23, 27-28; Def. Reply Mem. 9-12, 14-15, 19-21); identification of even a single particular payment or transaction improperly accounted for (see Mem. Op. 33; Def. Mem. 30-32; Def. Reply Mem. 12-13); identification of any inventory improperly carried on OfficeMax's books, and when, by how much, and why this inventory should have been written down (see Mem. Op. 30-31; Def. Mem. 30-32; Def. Reply Mem. 13-14).[7]

---

[6] Plaintiffs attempt to distract from the lack of relevant specificity by including various irrelevant details: the identity of specific but irrelevant lawsuits with vendors (Pl. Br. 3); that "[t]he 1999 vendor summit was held at the Cleveland Art Museum" (id. at 7); that vendors who gave incentive payments included Sharp, Panasonic and others (id.).

[7] Plaintiffs promise to allege "red flags that hammered home the fact to OfficeMax management that it had excess and obsolete inventory that would have to be written off at some point". (Pl. Br. 6.) But in fact, plaintiffs only repeat from their complaint the conclusory and general allegations that OfficeMax had inventory that was "three and four years old" "in the back of stores where it could not be sold", and that was "rarely marked down" "when it first became obsolete". (Id.) Such allegations do not state with particularity facts sufficient to show a GAAP violation, let alone "red flags" revealing such a clear violation in such an obvious manner that any reasonably trained and knowledgeable person should have been placed on notice of the impropriety and materiality of such accounting treatment. The repetition of their previously dismissed allegations therefore adds nothing to plaintiffs' claims. See, e.g., In re Comshare, Inc. Sec. Litig., 183 F.3d 542, 553-54 (6th Cir. 1999); In re SCB Computer Tech., Inc., Sec. Litig., 149 F. Supp. 2d 334, 363 (W.D. Tenn. 2001) ("In order to justify a strong inference of scienter, however, the 'red flags' must be closer to 'smoking guns' than to mere warning signs.") (see also Mem. Op. 31, 33-34).

3. Lack of Basis.

As the Court has recognized, much in the plaintiffs' Second Amended Complaint is alleged without factual basis, in violation of the PSLRA, making it impossible to distinguish what is supposedly "information and belief" pleading from mere speculation. (Mem. Op. 28, 30-34; 8/22/01 Hearing Tr. 95 (Ex. A).) No serious attempt is made to correct the defect. Putting previously unattributed conclusory allegations now in the mouths of anonymous informants scarcely identifies the source of the purported information as required by the PSLRA. (See Def. Mem. 11-12, 17-18; Def. Reply Mem. 11-12.)

4. The Totality of the Circumstances.

Plaintiffs suggest that the Court dismissed the Second Amended Complaint only because it lacked "sufficient" detail with respect to certain allegations. (Pl. Br. 2.) While the Complaint's pervasive lack of detail was certainly relevant to the Court's ruling, that ruling was more fundamental. Applying a "totality of the circumstances" analysis (Mem. Op. 21, 22 n.4), the Court concluded that "[t]aken as a whole, Plaintiffs' allegations of scienter lack strength", and that they "[do] not give rise to a strong inference of scienter" (id. at 34-35).

The bottom line concerning the "new" evidence--and promises of more--contained in plaintiffs memorandum is that they do not alter that conclusion, or transform the inference of scienter from one that "lack[ed] strength" (Mem. Op. 34) into one that is so strong that it "leave[s] little room for doubt as to misconduct", as the Sixth Circuit has said the PSLRA requires. Helwig v. Vencor, 251 F.3d 540, 553 (6th Cir. 2001).

This is so in part because plaintiffs' motion, like the Second Amended Complaint, relies throughout on conclusory allegations without particularity and without basis, as reviewed above.

This is so also because major themes of plaintiffs' motion (charges already covered at length in the Complaint dismissed by the Court) are simply irrelevant:

- Particularized and fact-based allegations of internal reports showing "massive inventory problems" (Pl. Br. 3), even if such could be made, would change nothing. Such reports would not be inconsistent with optimistic forecasts (if such could be found from the mouths of management), since management had publicly acknowledged the continuing problems with its inventory, and had launched major efforts to improve inventory management. (See Mem. Op. 26-27, 30 n.9.)

- Particularized and fact-based allegations relating to the Company's accounting methods with respect to vendor income (Pl. Br. 3, 6-7), even if such could be made, would change nothing. It would remain true that "one person's accounting decisions on a given matter, even if open to debate, are not necessarily improper, much less intentionally misleading" (Mem. Op. 31), and that "there is no allegation of a restatement of any of the periods during which this revenue recognition methodology was used" (id. at 32)--leaving any assertion of GAAP violations argumentative at best, and adding little weight towards an inference of scienter.[8]

Combining these "circumstances" with the inescapable fact that defendants had no motive--and indeed a personal financial disincentive--to perpetrate the alleged fraud, any inference that these defendants engaged in a scheme of intentional fraud as alleged by plaintiffs would remain weak, not strong. As a result, leave to amend would be futile, and so should be denied.

B. Plaintiffs' Proposed Third Amended Complaint Would Not Cure the Other Fatal Defects Identified in Defendants' Motion To Dismiss.

While the Court dismissed the Second Amended Complaint for failure to allege facts giving rise to a strong inference of scienter, without ruling on the other grounds for dismissal advanced by the defendants (Mem. Op. at 22), it bears noting that nothing in the

[8] Further, as read into the record by counsel for plaintiffs at oral argument, at the very beginning of the class period an independent analyst explained that "vendor support" could show up in "reported profits", and discussed the importance to OfficeMax's financials of "keep[ing] vendor support at least at current levels". (8/22/01 Hearing Tr. 72-73 (Ex. A).) Thus, the allegations concerning accounting for vendor income could not be material, because the supposed "true facts" were known to the market throughout the class period. (Cf. Mem. Op. 28-29; Def. Mem. 19 & n.14, 20-23.)

hypothetical Third Amended Complaint, to the extent one can deduce its probable contents from plaintiffs' brief, could solve those other fatal defects. Very briefly:

1. It remains true that many of the "optimistic statements" (Pl. Br. 4) during the class period on which plaintiffs base their case were neither made by nor attributable to defendants.[9] (Def. Mem. 13-15; Def. Reply Mem. 3-6.)

2. It remains true that plaintiffs do not allege with particularity facts establishing the actual falsity of the alleged misrepresentations. The examples discussed in defendants' prior briefs (Def. Mem. 16-23, 30-32; Def. Reply Mem. 8-16) are not remedied, and a new "false contradiction" is introduced: For a company with billions in annual sales and many hundred vendors, neither the existence of a handful of disputes with vendors, nor amounts due in the range of "hundreds of thousands of dollars", would tend to negate an assertion (if there had been a Company assertion, which there was not) that the Company expected positive cash flow of approximately $125 million in 1999.[10]

3. It remains true that many of the alleged misstatements, including statements of general optimism, were not material. (Def. Mem. 15 n.11, 19 n.14.) Plaintiffs' newly fabricated allegations of a "cash flow problem" and vendor relations problems (Pl. Br. 4) are likewise immaterial; there were never any inconsistent

---

[9] Indeed, plaintiffs continue the game, asserting in their brief that an analyst "reported that he had been told by the OfficeMax executives that OfficeMax 'is cash flow positive and should generate over $125 million in positive cash flow'". (Pl. Br. 4.) The report itself does not in any way attribute that conclusion to management, and the plaintiffs cite no cash flow prediction actually made by the company (because there was none). (DLJ Securities Report, dated Mar. 3, 1999 (see Wertheimer Aff. Ex. 24).) Plaintiffs' quotation of this analyst's recommendation that investors "take a fresh look at OfficeMax stock" because the "investment story at this time is compelling" (Pl. Br. 4 n.3) merely highlights their mistaken belief that a company is accountable for all statements made by independent analysts. (See Def. Mem. 13-15; Def. Reply Mem. 3-6.)

[10] Plaintiffs make no allegations as to, inter alia, the total number of vendors with whom OfficeMax had dealings in 1999, the total amount of vendor payments that OfficeMax made in 1999, and whether OfficeMax continued to have dealings in 1999 with any vendors with whom it was allegedly having a dispute.

disclosures of "true facts" relating to cash flow or vendor relations, nor is there any allegation that issues relating to cash flow or vendor relations ever harmed the company or its stock price.

4. It remains true that defendants' forward-looking statements, discussed in defendants' prior briefs, were appropriately qualified and are therefore not actionable. (Def. Mem. 23-25; Def. Reply Mem. 7-8.)

## V. THE PROPOSED AMENDMENTS WILL IMPOSE NEEDLESS DELAY AND UNDUE PREJUDICE.

In deciding a motion for leave to amend under Rule 15(a) (if the threshold Rule 59(e) standard for reconsideration were first met), the Court would consider not only the strength or futility of the proposed amendment, but whether its allowance would impose needless delay and undue prejudice. See, e.g., Crawford v. Roane, 53 F.3d 750, 753 (6th Cir. 1995) ("A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."). In this case, it would.

The case has been pending since September of 2000. In that time defendants have been obliged to undertake the considerable effort of analyzing three successive, lengthy, confused, and inconsistent complaints, and, once the target was fixed, briefing a detailed motion to dismiss. To take extraordinary steps now to delay the final conclusion of this litigation would indeed be "needless".

Plaintiffs cannot and do not claim that they had inadequate time to prepare a well-pleaded complaint--if facts sufficient to support such a complaint had actually existed.

Plaintiffs cannot claim that OfficeMax took any action to frustrate their investigation, or that they were not able to investigate thoroughly, because Mr. Lerach already said otherwise even before the Second Amended Complaint was drafted:

> We investigated this case, Your Honor, literally for months. That's one of the reasons I asked Mr. Walton to come. He's a forensic accountant as well as a lawyer. We

> investigated this case for months. We had private investigators out, we interviewed ex-employees, we got a lot of very, very important detailed information and then I went back to Dr. Fidel. (1/18/2001 Hearing Tr. 16 (see Wertheimer Aff. Ex. 26).)

And as noted above, Mr. Solomon indicated at oral argument that no less than four ex-employees had talked with counsel for plaintiffs about the vendor rebate issue alone. Unfortunately for plaintiffs, all these interviews with disgruntled ex-employees uncovered nothing but generalities and innuendo, not particularized allegations of wrongdoing.

Finally, counsel for plaintiffs cannot claim (as they attempt now to do (Pl. Br. 2)) ignorance of the well-established requirements of law which they have failed to meet. Plaintiffs' lead counsel, Mr. Lerach, is one of the nation's leading practitioners in the field of securities class action lawsuits--as he himself pointed out in arguing for appointment of a lead plaintiff. (See Mem. of Law in Support of Mot. To Appoint Lead Plaintiff, dated Nov. 27, 2000, at 9-10 (see Wertheimer Aff. Ex. 27).) Plaintiffs' counsel have extensive experience in litigating--and being called to account for failing to comply with--the requirements of the PSLRA.[11]

On the other hand, the prejudice which the revival of this case would impose on OfficeMax is apparent, and is precisely the type of burden which prompted Congress to enact the PSLRA. The cost of preparing a new motion to dismiss against a new lengthy complaint would be substantial. Less quantifiably but even more seriously, it is urgent--for the benefit of the Company's shareholders--that management's attention no longer be distracted from the conduct of what continues to be an intensely competitive and challenging business.

These types of prejudice, of course, are general, and for this reason courts in this Circuit regularly dismiss actions under the PSLRA with prejudice absent special circumstances going well beyond a simple desire for another chance. See, e.g., In re Champion Enters., Inc. Sec. Litig., 145 F. Supp. 2d at 872-74; Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co., 940

[11] Milberg Weiss Bershad Hynes & Lerach LLP prepared the complaints dismissed with prejudice under the PSLRA (or Rule 9(b)) in cases including: Lirette v. Shiva Corp., 27 F. Supp. 2d 268, 274 (D. Mass. 1998); In re Silicon Graphics, Inc. Sec. Litig., 970 F. Supp. 746, 763-64 (N.D. Cal. 1997); Greenberg v. Compuware Corp., 889 F. Supp. 1012, 1023 (E.D. Mich. 1995).

F. Supp. 1101, 1116 (W.D. Mich. 1996); Havenick v. Network Express, Inc.., 981 F. Supp. 480, 528 (E.D. Mich. 1997). As the district court for the Western District of Michigan recently noted:

> the purpose of the Reform Act is to prevent harassing strike suits filed the moment a company's stock price falls. The Reform Act could not achieve this purpose if plaintiffs were allowed to amend and amend until they got it right. This is not only supported by the plain language of the Reform Act cited above, it is supported by the voluminous legislative history.

In re Champion Enters., Inc. Sec. Litig., 145 F. Supp. 2d at 873; see also In re Cybershop.com Sec. Litig., Civ. No. 00-1993 (JAP), 2002 WL 413881, at *22 (D.N.J. Mar. 18, 2002) (copy attached hereto as Ex. D); In re NAHC, Inc. Sec. Litig., No. CIV. A. 00-4020, 2001 WL 1241007, at *26 (E.D. Pa. Oct. 17, 2001) (copy attached hereto as Ex. E).

## Conclusion

Because plaintiffs identify neither error of law nor genuinely new evidence which could justify reconsideration of the Court's Order; because the Third Amended Complaint proposed by plaintiffs would be futile; and because leave now to file a fourth complaint in this action would impose on OfficeMax the very type of prejudice which the PSLRA sought to forestall, defendants respectfully submit that the Court's Order dismissing this action should not be reconsidered, and that leave to file a Third Amended Complaint should not be granted.[12]

April 23, 2002

Respectfully submitted,

CRAVATH, SWAINE & MOORE,

by [signature]

Robert S. Rifkind
Roger G. Brooks
Members of the firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
(212) 474-3700 (fax)
RGBrooks@Cravath.com

Daniel P. Mascaro (0040975)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East 9th Street
Cleveland, Ohio 44114
(216) 621-0200 (phone)
(216) 696-0740 (fax)

Attorneys for Defendants

[12] Defendants respectfully submit that oral argument would be neither necessary nor materially helpful to the Court's decision of the present motion.